**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | |
|---|---|
| DANIEL JACKSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  1:20CV592 |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of Social | ) |
| Security, | ) |
| | ) |
| Defendant.[1] | ) |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Daniel Jackson, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits ("DIB"). (Docket Entry 1.) Defendant has filed the certified administrative record (Docket Entry 10 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 14, 16; see also Docket Entry 15 (Plaintiff's Memorandum); Docket Entry 17 (Defendant's Memorandum)). For the reasons that follow, the Court should enter judgment for Defendant.

---

[1] President Joseph R. Biden, Jr., appointed Kilolo Kijakazi as the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Andrew M. Saul as the Defendant in this suit. Neither the Court nor the parties need take any further action to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

# I. PROCEDURAL HISTORY

Plaintiff applied for DIB, alleging a disability onset date of August 2, 2017. (Tr. 177-80.) Upon denial of that application initially (Tr. 70-86, 108-17) and on reconsideration (Tr. 87-103, 119-26), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 127-28). Plaintiff, his non-attorney representative, and a vocational expert ("VE") attended the hearing. (Tr. 34-69.) The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 9-28.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-6, 175-76), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that decision, the ALJ made the following findings:

1. [Plaintiff] meets the insured status requirements of the . . . Act through December 31, 2021.

2. [Plaintiff] has not engaged in substantial gainful activity since August 2, 2017, the alleged onset date.

. . .

3. [Plaintiff] has the following severe impairments: obesity; bilateral carpal tunnel syndrome; degenerative disc disease; gout; post-traumatic stress disorder; anxiety; depression; sleep apnea; degenerative joint disease; tinnitus/hearing loss; diabetes mellitus.

. . .

4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals

2

the severity of one of the listed impairments in 20 CFR
Part 404, Subpart P, Appendix 1.

. . .

5.  .  .  .  [Plaintiff] had the residual functional
capacity to perform light work . . . with the following
provisos: he can frequently reach, handle, finger, push,
pull, and/or operate hand controls with the upper
extremities; occasionally push, pull and/or operate foot
controls with the lower extremities; occasionally climb
ramps and stairs, but no climbing of ladders, ropes or
scaffolds; occasionally balance, stoop, kneel, crouch,
crawl; avoid concentrated exposure to noise, further
defined to mean a maximum noise rating of 3 (moderate)
according to the [Selected Characteristics of Occupations
Defined in the Revised Dictionary of Occupational Titles
('SCO')]; avoid concentrated exposure to vibration; avoid
concentrated exposure to workplace hazards, such as
dangerous moving machinery and unprotected heights; he
can understand and perform simple, routine, repetitive
tasks; he can maintain concentration, persistence and
pace for 2-hour periods over the course of a typical 8-
hour work day with normal breaks in order to perform such
tasks, in a low-stress setting, further defined to mean
no production-pace or quota-based work; rather, he
requires a goal-oriented job primarily dealing with
things instead of people; no more than occasional social
interaction with supervisors and/or co-workers, but no
work with the public, such as sales or negotiation,
though incidental or casual contact is not precluded as
it might arise; he requires the ability to alternate
sitting and standing at 30 minute intervals.

. . .

6.  [Plaintiff] is unable to perform any past relevant
work.

. . .

10. Considering [Plaintiff]'s age, education, work
experience, and residual functional capacity, there are
jobs that exist in significant numbers in the national
economy that [he] can perform.

. . .

> 11. [Plaintiff] has not been under a disability, as
> defined in the . . . Act, from August 2, 2017, through
> the date of this decision.

(Tr. 14-27 (bold font and internal parenthetical citations omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of . . . review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). Plaintiff has not established entitlement to relief under the extremely limited review standard.

### A. Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting

4

<u>Richardson v. Perales</u>, 402 U.S. 389, 390 (1971)).  "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance."  <u>Mastro v. Apfel</u>, 270 F.3d 171, 176 (4th Cir. 2001) (internal brackets and quotation marks omitted).  "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence."  <u>Hunter</u>, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Social Security Commissioner]."  <u>Mastro</u>, 270 F.3d at 176 (internal brackets and quotation marks omitted).  "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Social Security Commissioner] (or the ALJ)."  <u>Id.</u> at 179 (internal quotation marks omitted).  "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law."  <u>Craig v. Chater</u>, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," <u>Hall v. Harris</u>, 658 F.2d 260, 264 (4th Cir. 1981),

and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2] "To regularize the adjudicative process, the Social Security Administration [('SSA')] has . . . promulgated . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity

_____

[2] The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[3] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's [RFC]." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the

---

[3] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [government] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

7

claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[5]

## B. Assignments of Error

Plaintiff argues that the Court should overturn the ALJ's finding of no disability on these grounds:

1) "[t]he ALJ erred by failing to perform a necessity analysis of [] Plaintiff's need for a hand-held assistive device" (Docket Entry 15 at 5 (bold font and single-spacing omitted)); and

2) "[t]he ALJ erred by failing to perform a function-by-function assessment of Plaintiff's ability to use his [upper

_____

[5] A claimant thus can qualify as disabled via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

extremities] for work-related activities" (id. at 10 (bold font and single-spacing omitted)).

Defendant contends otherwise and seeks affirmance of the ALJ's decision. (Docket Entry 17 at 4-15.)

### 1. Need for Hand-Held Assistive Device

Plaintiff's first assignment of error maintains that "[t]he ALJ erred by failing to perform a necessity analysis of [] Plaintiff's need for a hand-held assistive device." (Docket Entry 15 at 5 (bold font and single-spacing omitted).) In that regard, Plaintiff contends that "the medical record contains ample evidence that corroborates [Plaintiff]'s claims" that "he started using the cane 'right before [he] got out of the service'" and "that he use[d] a cane 'all the time.'" (Id. (quoting Tr. 44); see also id. at 5-6 (describing evidence Plaintiff believes supports his medical need for a cane (citing Tr. 44-45, 48-49, 53, 360, 364-65, 485, 556, 1151-53, 1181, 1196, 1235, 1206, 1240, 1270)).) Plaintiff argues that the ALJ, "despite th[e corroborating] testimony and medical evidence, . . . did not perform an analysis of [Plaintiff]'s need for an assistive device and did not articulate a rationale for excluding such a limitation from the RFC." (Id. at 6 (citing Tr. 21-24).)

According to Plaintiff, Social Security Ruling 96-9p, Policy Interpretation Ruling Titles II and XVI: Determining Capability to Do Other Work – Implications of a[n RFC] for Less Than a Full Range

9

of Sedentary Work, 1996 WL 374185, at *7 (July 2, 1996) ("SSR 96-
9p"), "requires ALJ's [sic] to determine whether nor not a hand-
held assistive device is medically necessary," and that "[t]he ALJ
. . . must determine whether the device is needed all the time,
periodically or only in certain situations such as long distances
or uneven terrain." (Docket Entry 15 at 6.) Plaintiff further
argues that "'a prescription or the lack of a prescription for an
assistive device is not necessarily dispositive of medical
necessity'" (id. (quoting Fletcher v. Colvin, No. 1:14CV380, 2015
WL 4506699, at *8 (M.D.N.C. July 23, 2015) (unpublished) (Webster,
M.J.), recommendation adopted, slip op. (M.D.N.C. Aug. 14, 2015)
(Biggs, J.))), as well as that "remand [i]s required where the ALJ
'fail[s] to explicitly address whether Plaintiff's need for a
[hand-held assistive device] was medically necessary and, at most,
seems to tacitly reject the notion that it could be'" (id. (quoting
Fletcher, 2015 WL 4506699, at *9 (emphasis added), and citing Smith
v. Saul, No. 5:18CV282, 2019 WL 5800086, at *9-10 (E.D.N.C. July
16, 2019) (unpublished), recommendation adopted, 2019 WL 3820094
(E.D.N.C. Aug. 14, 2019) (unpublished), McLaughlin v. Colvin, No.
1:12CV621, 2014 WL 12573323, at *2 (M.D.N.C. July 25, 2014) (Dever,
C.J., E.D.N.C. by designation), and Steigerwald v. Commissioner of
Soc. Sec., No. 1:12CV2739, 2013 WL 5330837, at *5 (N.D. Ohio Sept.
23, 2013) (unpublished))). Plaintiff deems "[t]he ALJ's error
. . . significant as the [VE] testified at the hearing that if a

cane [were] necessary for both standing and ambulation, then no jobs would be available at the light range of exertion" and Plaintiff "would 'grid' and be found disabled under [Rule 201.14 of] the Medical Vocational Guidelines." (Id. at 9 (citing 20 C.F.R. Pt. 404, Subpt. P, App'x 2, § 201.14).) Plaintiff's contentions miss the mark.

As Plaintiff has argued, "the legal issue does not turn on whether a cane was 'prescribed' . . . but whether a cane was 'medically required.'" Spaulding v. Astrue, 379 F. App'x 776, 780 (10th Cir. 2010). However, "[t]o find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." SSR 96-9p, 1996 WL 374185, at *7 (emphasis added). Proper application of these principles defeats this assignment of error.

First, Plaintiff's assertion that the ALJ failed to "perform an analysis of [Plaintiff]'s need for an assistive device" (Docket Entry 15 at 6) entirely ignores the following analysis by the ALJ:

> [Consultative medical examiner Dr. William A. Gartlan's] opinion that [Plaintiff]'s use of a cane is medically necessary is not consistent with evidence, including [Dr. Gartlan's] own exam findings and consistent exam findings throughout the medical evidence of record showing

11

> [Plaintiff] retained full motor strength in the upper and
> lower extremities and had no focal neurologic deficits.
> Dr. Gartlan noted [Plaintiff] refused to attempt to heel
> or toe walk without the cane due to knee and foot pain.

(Tr. 25; see also Tr. 21 (observing that, although, "[a]t times,
[Plaintiff] was noted to walk with an antalgic gait and use a cane,
[] the record d[id] not demonstrate focal neurological deficits
that result[ed] in motor weakness, as the clinical exams
consistently showed 5/5 strength in the upper and lower
extremities").) Thus, Plaintiff's argument that "remand [i]s
required [because] the ALJ 'failed to *explicitly* address whether
Plaintiff's need for a [hand-held assistive device] was medically
necessary and, at most, seem[ed] to tacitly reject the notion that
it could be'" (Docket Entry 15 at 5 (quoting Fletcher, 2015 WL
4506699, at *9 (emphasis added))) falls short. Moreover, to the
extent Plaintiff attacks the sufficiency of the ALJ's medical
necessity analysis, as discussed in more detail below, that
challenge also fails.

In that regard, Plaintiff initially faults the ALJ for
overlooking evidence supporting the medical necessity of
Plaintiff's cane. (Docket Entry 15 at 5-6 (citing Tr. 44-45, 48-
49, 53, 360, 364-65, 485, 556, 1151-53, 1181, 1196, 1206, 1240,
1270).) More specifically, Plaintiff relies on his own testimony
regarding his cane usage (see id. at 5 (citing Tr. 44-45, 48-49,
53)), imaging tests of his lower back and feet (see id. (citing Tr.

360, 364-65)), his subjective statements to providers about his physical limitations (see id. (citing Tr. 485, 556, 1151)), observations by treatment providers of Plaintiff's cane use from November 2017 to January 2019 (see id. at 5-6 (citing Tr. 1152, 1181, 1196, 1206, 1240, 1270)), Dr. Gartlan's notation of Plaintiff's antalgic gait pattern (see id. at 5 (citing Tr. 1152)), and Dr. Gartlan's inability to further assess Plaintiff's gait due to his pain-based refusal to attempt mobility testing (see id. at 5-6 (citing Tr. 1153)).

In pointing to evidence that Plaintiff believes supports his cane's necessity, he misinterprets this Court's standard of review. The Court must determine whether the ALJ supported his analysis of medical necessity with substantial evidence, defined as "more than a mere scintilla of evidence but . . . somewhat less than a preponderance," Mastro, 270 F.3d at 176 (brackets and internal quotation marks omitted), and not whether other record evidence weighs against the ALJ's analysis, Lanier v. Colvin, No. CV414-004, 2015 WL 3622619, at *1 (S.D. Ga. June 9, 2015) (unpublished) ("The fact that [the p]laintiff disagrees with the ALJ's decision, or that there is other evidence in the record that weighs against the ALJ's decision, does not mean that the decision is unsupported by substantial evidence."). Here, the ALJ made the following findings regarding the medical evidence of Plaintiff's back, knee, and foot impairments and their impact on his ability to ambulate:

13

- at an office visit with orthopedic specialist Dr. Charles Huang on September 8, 2016, Plaintiff "was noted to ambulate to the clinic with a <u>steady</u> gait[,] . . . [r]ecent x-rays of the bilateral knees showed <u>minimal</u> arthritic changes[, and] . . . "[m]otor strength was 5/5 in the muscles of the hips and lower extremities" (Tr. 22 (emphasis added); <u>see also</u> Tr. 680-83); and

- Dr. Gartlan "examined [Plaintiff] on November 16, 2017" and noted "an antalgic gait pattern with need of a cane" as well as "<u>mild</u> difficulty getting on and off the exam table, and up and out of a chair," but "[r]ange of motion was <u>normal</u> in all major joints in the bilateral upper and lower extremities," "[s]traight leg raise testing was <u>negative</u> bilaterally[, m]otor strength was <u>5/5</u> bilaterally in the upper and lower extremities," and "Dr. Gartlan assessed . . . <u>mild</u> functional [l]imitation resulting from bilateral plantar fasciitis and pes planus feet" (Tr. 23 (emphasis added); <u>see also</u> Tr. 1150-55).

Those findings constitute substantial evidence to support the ALJ's determination that a cane did not qualify as medically necessary for Plaintiff (<u>see</u> Tr. 21, 25).

The ALJ's evaluation of the opinion evidence also supports his finding that Plaintiff's impairments did not necessitate a cane. As an initial matter, none of Plaintiff's treating providers offered an opinion of medical necessity as to Plaintiff's cane or delineated the circumstances under which Plaintiff must use the cane, i.e., for ambulation and/or balance, or on standard and/or uneven surfaces. Under SSR 96-9p, that fact alone would support the ALJ's finding that Plaintiff's cane did not reach the level of medical necessity. <u>See</u> SSR 96-9p, 1996 WL 374185, at *7 (emphasis

14

added) ("To find that a hand-held assistive device is medically required, there <u>must be medical documentation establishing the need for a hand-held assistive device</u> to aid in walking or standing, and <u>describing the circumstances for which it is needed</u> (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information).").

In addition, both state agency medical consultants found Plaintiff remained capable of up to <u>six</u> hours each of standing or walking in an eight-hour workday, frequent climbing of ramps and stairs, frequent balancing, stooping, kneeling, and crouching, unlimited climbing of ladders, ropes, and scaffolds, and did not find a cane medically necessary. (<u>See</u> Tr. 78-80, 95-97.) The ALJ found those opinions "generally consistent with the evidence" that the consultants reviewed and "thus [] somewhat persuasive," but also found that "the record in its entirety support[ed ] greater limitations . . ., particularly the evidence in May 2018 and July 2018." (Tr. 25; <u>see also</u> Tr. 26.) Based on the evidence post-dating the consultants' review, the ALJ crafted the RFC to include, <u>inter alia</u>, a sit/stand option and only occasional postural movements and climbing, but the ALJ neither reduced the total amount of standing or walking Plaintiff could perform nor included the need for a hand-held assistive device. (<u>Compare</u> Tr. 78-80, 95-97, <u>with</u> Tr. 19.) Thus, the ALJ's analysis of the consultants'

15

opinions further supports the ALJ's medical necessity finding regarding Plaintiff's cane.

Moreover, notwithstanding the ALJ's treatment of "[Dr. Gartlan's] opinion [as stating] that [Plaintiff]'s use of a cane [wa]s medically necessary" (Tr. 25; see also id. (deeming such opinion "not consistent with the evidence")), a review of Dr. Gartlan's report does not establish that he actually found Plaintiff's cane medically necessary. Under the heading "Physical Examination" and the sub-heading "Ambulation," Dr. Gartlan noted that "[Plaintiff] has an antalgic gait pattern with a need of a cane." (Tr. 1152 (capitalization omitted) (emphasis added).) However, later in the report, under the sub-heading "Gait," Dr. Gartlan documented Plaintiff's "[a]ntalgic gait with use of a cane" (Tr. 1153 (emphasis added)) and, under the heading "Impression," Dr. Gartlan opined that Plaintiff "had an antalgic gait with the use of a cane and refused to attempt ambulation on his toes, heels, tandem walking or squatting due to pain," as well as that Plaintiff's "[b]ilateral plantar fasciitis and pes planus feet" caused only "mild functional limitation" (Tr. 1154). Accordingly, the record does not show that Dr. Gartlan in fact offered an opinion that Plaintiff's cane qualified as medically necessary.

Even if Dr. Gartlan's statement(s) constituted a medical necessity opinion, Plaintiff has not shown that the ALJ erred in discounting that opinion. In that regard, Plaintiff complains that

16

the ALJ "misse[d] the point" by finding that "the record d[id] not demonstrate motor weakness" as a basis for discounting Dr. Gartlan's opinion that Plaintiff's cane qualified as medically necessary. (Docket Entry 15 at 9 (citing Tr. 21).) Plaintiff points out that he "d[id] not assert that he need[ed] a cane because of weakness but rather . . . because he [wa]s in pain." (Id. (citing Tr. 44-45, 1151-53).) That argument fails because, as discussed above, the ALJ noted objective findings other than weakness that supported his finding as to lack of medical necessity, such as full range of motion in the lower extremities and normal gait, while also discounting Plaintiff's subjective complaints of pain (see Tr. 21), a finding unchallenged by Plaintiff (see Docket Entry 15).

Next, Plaintiff objects to the ALJ "not[ing] in his Step 3 [listings] analysis that [Plaintiff] testified that he did not use his cane when he attended the local community college" (Docket Entry 15 at 8 (citing Tr. 15)), because Plaintiff actually "said he 'might be able to not use a cane depending'" (id. (quoting Tr. 49 (emphasis added))), "and later indicated that if he walked further than 50 feet at the grocery store he would need to use a motorized cart" (id. (quoting Tr. 53)). According to Plaintiff, "it is possible, if not likely, that the ALJ's seeming misunderstanding of [Plaintiff]'s testimony colored his analysis, or lack thereof, in this matter." (Id.)

The following exchange took place between the ALJ and
Plaintiff regarding his need for a cane when walking short
distances while attending community college classes:

> [ALJ:] . . . [T]here's some suggestion that maybe you
> were trying to take some kind of classes of some kind?
> . . .
>
> [Plaintiff:] Yeah, I took some classes down at
> Fayetteville Technical Community College[.]
>
> [ALJ:] [] Was that recently or this year sometime?
>
> [Plaintiff:] Yes sir it was recent[.]
>
> . . .
>
> [ALJ:] How long did you end up doing the class total?
>
> [Plaintiff:] Just one semester.
>
> [ALJ:] Okay, which was what full time?
>
> [Plaintiff:] Four, four months. Yeah one time, once.
>
> [ALJ:] Is that something that you had to actually had go
> to the community college to do?
>
> [Plaintiff:] Yes sir.
>
> [ALJ:] <u>Were you able to get there? You know there's –
> with the cane and walking and all that, you took that
> with you</u>?
>
> [Plaintiff:] <u>Yeah</u> -
>
> [ALJ:] - <u>each time and did it</u>?
>
> [Plaintiff:] <u>Most of the time I had – you know I got
> these knee braces I put on too</u>.
>
> [ALJ:] Okay.
>
> [Plaintiff:] <u>If I walk a short distance I might be able
> to not use a cane depending</u>, but if I –

18

[ALJ:] [] Okay, okay.  So you wore the knee braces?

[Plaintiff:] Yeah and I used the cane too.

(Tr. 47-49 (emphasis added).)

In light of the above-quoted testimony, the ALJ erred by finding that "[Plaintiff] testified he was able to attend classes at a community college and did not use his cane there" (Tr. 15 (emphasis added); see also Tr. 20 (containing ALJ's summarization of Plaintiff's testimony that "[h]e does not use his cane for short distances" (emphasis added))); however, that error remains harmless under the circumstances here, see generally Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989) (observing that "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result").  Notably, the ALJ expressly acknowledged Plaintiff's testimony that "he use[d] his cane any time he [wa]s on his feet" (Tr. 20 (emphasis added)), but found Plaintiff's statements concerning the intensity, persistence and limiting effects of his pain not entirely consistent with the medical evidence and other evidence in the record (Tr. 21), and Plaintiff has not challenged that finding by the ALJ (see Docket Entry 15).

In sum, Plaintiff's first assignment of error fails as a matter of law.

19

## 2. **Lifting, Handling, and Fingering Limitations**

In Plaintiff's second and final issue on review, he faults the ALJ for "failing to perform a function-by-function assessment of Plaintiff's ability to use his [upper extremities] for work-related activities." (Docket Entry 15 at 10 (bold font and single-spacing omitted).) According to Plaintiff, "the record contains ample evidence supporting [Plaintiff]'s contentions that he has difficulty handling and fingering objects as well as lifting them (indeed dropping them) due to bilateral [upper extremity] pain and sensory disturbance from his [CTS] and cervical radiculopathy." (Id. at 13; see also id. at 11-12 (citing Tr. 485, 502, 509, 523, 532, 534, 1157, 1177, 1181-82, 1201, 1203, 1224, 1297, 1320) (detailing evidence Plaintiff believes supports his inability to lift 20 pounds and/or perform frequent handling and fingering).) Plaintiff contends that "the ALJ summarized a few pieces of evidence from the record in his decision," but "fail[ed] to explain how th[at] evidence support[ed] his conclusion that [Plaintiff] could lift up to 20 pounds and perform frequent as opposed to occasional handling and fingering in the RFC." (Id. at 10-11 (citing Tr. 21-24, Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016), and Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018)).) Plaintiff further notes that "[t]he VE testified that if an individual was limited to occasional handling and fingering, in addition to [Plaintiff]'s other limitations, then there would be no

20

jobs in the national economy that he could perform." (Id. at 10 (citing Tr. 66-67).) Those arguments do not warrant reversal or remand.

RFC measures the most a claimant can do despite any physical and mental limitations. Hines, 453 F.3d at 562; 20 C.F.R. § 404.1545(a). An ALJ must determine a claimant's exertional and non-exertional capacity only after considering all of a claimant's impairments, as well as any related symptoms, including pain. See Hines, 453 F.3d at 562-63; 20 C.F.R. § 404.1545(b). The ALJ then must match the claimant's exertional abilities to an appropriate level of work (i.e., sedentary, light, medium, heavy, or very heavy). See 20 C.F.R. § 404.1567. Any non-exertional limitations may further restrict a claimant's ability to perform jobs within an exertional level. See 20 C.F.R. § 404.1569a(c).

An ALJ need not discuss every piece of evidence in making an RFC determination. See Reid v. Commissioner of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014). However, "the ALJ must both identify evidence that supports his [or her] conclusion and build an accurate and logical bridge from that evidence to [that] conclusion." Woods, 888 F.3d at 694 (internal emphasis, quotation marks, and brackets omitted). As to the role of the function-by-function analysis in that determination, the relevant administrative ruling states: "The RFC assessment must first identify the individual's functional limitations or restrictions

21

and assess his or her work-related abilities on a function-by-function basis. . . . Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." Social Security Ruling 96-8p, Policy Interpretation Ruling Titles II and XVI: Assessing [RFC] in Initial Claims, 1996 WL 374184, at *1 (July 2, 1994) ("SSR 96-8p").

The Fourth Circuit has addressed this administrative ruling and the issue of whether an ALJ's failure to articulate a function-by-function analysis necessitates remand. See Mascio v. Colvin, 780 F.3d 632, 636–37 (4th Cir. 2015). Specifically, that court stated "that a per se rule is inappropriate given that remand would prove futile in cases where the ALJ does not discuss functions that are irrelevant or uncontested," id. at 636, but that "'remand may be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review,'" id. (internal brackets and ellipsis omitted) (quoting Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)); see also Britt v. Saul, No. 19-2177, ___ F. App'x ___, ___, 2021 WL 2181704, at *5 (4th Cir. May 28, 2021) ("Meaningful review is frustrated — and remand necessary — only where 'we are unable to fathom the [ ] rationale in relation to evidence in the record.'" (quoting Cichocki, 729 F.3d at 177)).

22

Here, although the ALJ did not include in his decision an express function-by-function discussion of Plaintiff's manipulative abilities (see Tr. 20-26), the ALJ's decision nevertheless supplies the necessary "accurate and logical bridge," Woods, 888 F.3d at 694 (internal quotation marks omitted), between the evidence and his findings that Plaintiff's cervical degenerative disc disease ("DDD") and bilateral CTS (A) qualified as severe (see Tr. 14) but (B) did not cause limitations greater than the lifting requirements of light work with, inter alia, "frequent reaching, handling, fingering, pushing, pulling, and operating of hand controls" (Tr. 19).

First, the ALJ's evaluation of Plaintiff's subjective symptom reporting supports the ALJ's finding that Plaintiff's cervical DDD and CTS did not warrant greater lifting, handling, and fingering limitations. In that regard, the ALJ expressly acknowledged Plaintiff's testimony that he "ha[d] not had surgery on his hands yet because his hemoglobin A1c was too high" (Tr. 20; see also Tr. 41) and that "[h]e drop[ped] things a lot, so his wife br[ought] his coffee cup to him" (Tr. 21; see also Tr. 50, 57-58); however, the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms [we]re not persuasive of disability based upon the medical and other evidence in the record, for the reasons explained in th[e

23

ALJ's] decision" (Tr. 21). In support of that finding, the ALJ provided the following analysis:

> As for [Plaintiff]'s statements about the intensity, persistence, and limiting effects of his . . . symptoms, they are inconsistent with [the] weight of the medical evidence, with numerous exam reports noting he was well appearing with normal mood and affect and appeared comfortable. At times, he was noted to walk with an antalgic gait and use a cane, but the record does not demonstrate focal neurologic deficits that result in motor weakness, as the clinical exams consistently showed 5/5 strength in the upper and lower extremities. Regarding his mental impairments, the mental status exams in the record were largely within normal limits with no indications of deficits in concentration or recent or remote memory. Most of the mental status exam note normal or euthymic mood and affect, although at times he was noted to appear anxious or worried. The record does not reflect the frequency or severity of gout flares he has alleged, although he does have a diagnosis of gout and takes medication for it. The record shows the claimant has a history of obstructive sleep apnea diagnosed per a November 2013 sleep study. Dr. Ahmed Elaaggar noted [Plaintiff]'s obstructive sleep apnea was mild and counseled him on sleep hygiene and recommended a weight loss program.

(Tr. 21 (internal parenthetical citation omitted).) Plaintiff did not challenge those findings by the ALJ. (See Docket Entry 15.)

Plaintiff's reliance on evidence he believes supports greater lifting, handling, and fingering limitations (see id. at 11-12 (citing Tr. 485, 502, 509, 523, 532, 534, 1157, 1177, 1181-82, 1201, 1203, 1224, 1297, 1320)) again misinterprets this Court's standard of review. The Court must determine whether the ALJ supported his analysis of Plaintiff's abilities to lift, handle, and finger with substantial evidence, defined as "more than a mere

24

scintilla of evidence but . . . somewhat less than a
preponderance," Mastro, 270 F.3d at 176 (brackets and internal
quotation marks omitted), and not whether other record evidence
weighs against the ALJ's analysis, Lanier, 2015 WL 3622619, at *1
("The fact that [the p]laintiff disagrees with the ALJ's decision,
or that there is other evidence in the record that weighs against
the ALJ's decision, does not mean that the decision is unsupported
by substantial evidence.").

Here, the ALJ discussed the following objective medical
evidence relating to Plaintiff's abilities to lift, handle, and
finger:

- "[a] cervical spine x-ray done on January 3, 2017 showed diffuse degenerative changes with no evidence of significant dis[c] space narrowing or intervertebral foramina encroachment" (Tr. 23);

- despite Plaintiff's complaints to Dr. Gartlan that "he had pain in the bilateral thumbs associated with numbness and tingling with overuse, and reported dropping small objects," Plaintiff's "[g]rip strength was 5/5 bilaterally, with normal ability to finger-to-thumb, button, zipper, and pick up coins" and "[m]otor strength was 5/5 bilaterally in the upper . . . extremities" and "Dr. Gartlan assessed no functional limitations resulting from [Plaintiff]'s [CTS]" (id. (emphasis added));

- "[p]rimary care clinical notes dated November 28, 2017 showed [Plaintiff] . . . said his hands went numb and he dropped things sometimes," but "the physical exam showed no significant joint deformities, sensory exam was non-remarkable, [] deep tendon reflexes were equal and symmetrical[, and m]uscle tone, strength and coordination were normal" (Tr. 24); and

25

- "Daniel Wayne Ingram, a physician assistant, examined [Plaintiff] on October 18, 2018 for complaints of neck and arm pain" and "[t]he exam showed mild shoulder pain with range of motion, with a negative Spurling maneuver[, ] 5/5 strength in the grip, biceps, triceps and deltoids, and reflexes were unremarkable" and "Ingram stated that [a July 2018] MRI report did not support any bilateral arm symptoms" and "recommended facet injections and epidural injections at the C5-6 level" (id.).

That analysis, along with the ALJ's evaluation of Plaintiff's subjective symptom reporting discussed above, provides substantial evidence to support the ALJ's finding that Plaintiff's cervical DDD and bilateral CTS warranted a limitation to light work and frequent, but not occasional, handling and fingering (see Tr. 19).

Third, the opinion evidence would not have compelled the ALJ to adopt greater lifting, handling, and fingering limitations. Significantly, no treatment provider of record offered any opinion(s) restricting Plaintiff's lifting, handling, and fingering capabilities. As discussed above, Dr. Gartlan opined that Plaintiff's CTS caused "no functional limitation." (Tr. 1154 (emphasis added).) Moreover, the state agency medical consultant at the initial level of review found Plaintiff capable of performing the lifting/carrying/pushing/pulling requirements of medium work (i.e., 50 pounds occasionally and 25 pounds frequently, see 20 C.F.R. § 404.1567(c)) with frequent handling and fingering (see Tr. 78-79), and the reconsideration-level consultant affirmed that finding but adopted no limits on fingering (see Tr. 95-96).

26

The ALJ found those opinions "somewhat persuasive" as consistent with evidence the consultants reviewed (Tr. 25; <u>see also</u> Tr. 26) but, in light of later received evidence primarily reflecting treatment for CTS symptoms (<u>see</u> Tr. 1157-1311), reduced the exertional level of the RFC from medium to light (<u>see</u> Tr. 19), and added a restriction to frequent reaching, pushing, pulling, and operation of hand controls (<u>id.</u>). Thus, even after accounting for medical evidence "that support[ed ] greater limitations" (Tr. 25; <u>see also</u> Tr. 26), the ALJ did not find restriction of lifting to less than 20 pounds or the inclusion of only occasional handling and fingering in the RFC warranted (<u>see</u> Tr. 19).

For the above-stated reasons, Plaintiff has failed to show that the ALJ improperly evaluated Plaintiff's abilities to lift, handle, and finger, and his second assignment of error thus falls short.

### III. CONCLUSION

Plaintiff has not established grounds for relief.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for Judgment on the Pleadings (Docket Entry 14) be denied, that

27

Defendant's Motion for Judgment on the Pleadings (Docket Entry 16)

be granted, and that judgment be entered dismissing this action.


                              /s/ L. Patrick Auld
                              **L. Patrick Auld**
                    **United States Magistrate Judge**


July 19, 2021